### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STEVEN NEWBERN,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CUSTOMIZED DISTRIBUTION SERVICES, INC.,**<br><br>Defendant. | Case No.  3:23-cv-03871-RJD |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Customized Distribution Services, Inc. ("CDS") moves this Court to dismiss, with prejudice, Plaintiff's First Amended Class Action Complaint ("Complaint"). Plaintiff asserts one count of violation of the Illinois Biometric Information Privacy Act ("BIPA") in his Complaint. The Complaint must be dismissed because Plaintiff unequivocally waived this claim when he provided his consent for CDS to collect biometric data. Accordingly, for the reasons described herein, Plaintiff's Complaint must be dismissed.

### I.      INTRODUCTION

CDS hired Plaintiff in July 2017 as a Warehouse Forklift Operator. (Exhibit A, Declaration of Ben Mera, ¶ 6.) Plaintiff was assigned to work at a warehouse located in Edwardsville, Illinois, where CDS used finger scan timeclocks to record employees' time worked so they could be paid. (Ex. A, ¶ 8.) Although these finger scan timeclocks did not store biometric data within the meaning of BIPA, CDS implemented a Notice of Biometric Data Collection ("Notice") regarding finger scan timeclocks that complied with BIPA. Plaintiff received the Notice and consented to its terms on July 24, 2017. (Ex. A, ¶¶ 11, 12.) Plaintiff was terminated in 2019 and rehired in 2022.

(Ex. A, ¶ 7.) Upon his rehire, he was provided with a new Biometric Information Privacy Employee Consent Form ("Consent") that provided the same information with respect to the finger scan timeclocks CDS used. (Ex. A, ¶¶ 13, 14.)

Ignoring the IFC Notice and Consent and Plaintiff's consent to the same—which defense counsel has provided to Plaintiff's counsel—Plaintiff contends that CDS violated BIPA by collecting their biometric data without putting in place an appropriate policy and obtaining a written release. (Compl., ¶ 35.) In other words, Plaintiff asks this Court to set aside the valid Notice he was provided, ignore his consent, and allow a potentially multi-million-dollar class action to proceed. This defies logic and equity and is wholly unsupported by BIPA. Plaintiff's Complaint must be dismissed.

## II.    BACKGROUND

### A.    CDS Used Finger Scan Timeclock Technology to Record Time Worked.

CDS provides organizations with strategic support and customized services with respect to supply chain issues. (Ex. A, ¶ 4.) CDS operates a warehouse in Edwardsville, Illinois, where Plaintiff worked. (Ex. A, ¶ 8.) While working at CDS, Plaintiff used a finger scan timeclock to record his time worked so he could be paid. (*Id.*) He scanned his fingerprint at the beginning and end of his workday, as well as when he took breaks, in order to clock in and out of work. (Ex. A, ¶ 9.) CDS paid Plaintiff based on the information collected by the timeclocks at issue in this litigation. (Ex. A, ¶ 10.)

2

**B.      CDS Provided Plaintiff with a Notice of Biometric Data Collection and Plaintiff Consented to its Terms on Two Occasions.**

**1.      Plaintiff Executed a Notice and Consent in 2017.**

Although CDS did not use finger scan timeclock technology to store biometric information as defined by BIPA,[1] it nevertheless implemented the Notice, which complied with the requirements of BIPA. (Ex. A, Ex. 1.) The Notice informed workers of the information collected by the finger scan timeclock technology: fingerprints. Specifically, the Notice set forth the purpose of this technology as follows:

> For those employees of Customized Distribution Services that are paid on an hourly basis, CDS utilizes time clocks that will record the time that an employee starts and ends work. These time clocks will scan the employee's fingerprint in order to identify the person clocking in and out. Fingerprints are considered biometric information, which is treated as confidential personal information by CDS.

(Ex. A, Ex. 1.) The Notice also explained "CDS will only collect this fingerprint data for the purpose of having an employee clock in/out at the time clock" and unequivocally provided "the fingerprint information will not be used for any other purpose." (*Id.*).

Moreover, CDS clearly stated the fingerprint information is not stored as a raw image by the timeclock, but rather as information stored in an encrypted manner using an established algorithm. The Notice also stated the length of time the data would be stored: "The fingerprint data is retained as long as the employee is actively employed and using the time clocks for the purposes of punching in and out." (*Id.*) Indeed, "The data is permanently deleted as soon as the employee is terminated from employment." (*Id.*).

---

[1] As set forth in the Notice, the finger scan timeclock technology does not collect a fingerprint scan and fingerprint information is not stored by the timeclock. Instead, the fingerprint information is stored in an encrypted manner using an established algorithm. In other words, the timeclocks did not store fingerprints (or partial fingerprints), but rather only a mathematical representation of certain characteristics of one's fingertip.

As required by BIPA, the Notice also includes a release: "Your signature below acknowledges that you have read this communication, are fully aware of how CDS will use confidential biometric data, and that you are providing your consent for CDS to collect said data." (*Id.*) Plaintiff signed and printed his name immediately below this release on July 24, 2017, prior to using the timeclock. (Ex. A, ¶¶ 11, 12.) By executing this Notice on July 24, 2017, Plaintiff consented in writing to the collection of his data, fully understanding the purpose of collection and that his data would be retained until the termination of his employment.

### 2. Plaintiff Executed a Notice and Consent in 2022.

Likewise, when CDS rehired Plaintiff in 2022, it provided him with the Consent, which identified the same biometric information collected by its finger scan timeclock technology: fingerprint data. (Ex. A, Ex. 2.) Like the 2017 Notice, the 2022 Consent set forth the clear purpose of the data collection, which was identification of employees who clock in and out for purposes of paying the employees. (*Id.*) The Consent also explained that Plaintiff was "free to decline to provide biometric identifiers and biometric information" and that his signature represented voluntary consent to providing his information to use the time and attendance software. (Id.) By executing the Consent on May 20, 2022, Plaintiff agreed in writing to the collection of his biometric data, once again fully understanding the purpose of collection and consenting thereto.

## III. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal where a complaint fails to state a plausible claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Federal Rules of Civil Procedure "[demand] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Hence, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor will a complaint that tenders merely "naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Critically, when deciding a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court reads the Complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). Only a complaint that states a plausible claim for relief based on these standards can survive a motion to dismiss. *Id.*

Plaintiff's Complaint does not contain sufficient facts to state a claim for relief that is plausible under BIPA.

### B.    BIPA

BIPA regulates the "[r]etention; collection; disclosure; [and] destruction" of biometric identifiers and information. *See* 740 ILCS 14/10.

Section 15(a) of BIPA requires certain private entities in possession of biometric identifiers or biometric information to:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever comes first.

740 ILCS 14/15(a).

Section 15(b) of BIPA sets forth notice and consent requirements for private entities before they collect an individual's biometric identifier or biometric information:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purposes and length of term for which a biometric identifier or biometric information is being collected stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

Section 15(c) of provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

Finally, Section 15(d) of BIPA governs the disclosure of an individual's biometric identifier or biometric information:

> (d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

>> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

>> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

>> (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

>> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d).

## IV.    ARGUMENT

Even accepting Plaintiff's allegations as true for purposes of this Motion only, Plaintiff's claims against CDS must be dismissed because Plaintiff was provided with a compliant policy related to the finger scan timeclock technology, consented to the use of the technology, and waived claims relating to the technology.

### A.    CDS Satisfied the Requirements of BIPA with the Notice of Biometric Data Collection.

#### 1.    BIPA Sections (a) and (b).

Plaintiff's BIPA Section (a) and (b) claims fail as a matter of law because CDS satisfied all requirements under BIPA related to the collection, use, or storage of biometric data, by providing Plaintiff with the Notice he executed.

Section 15(a) is satisfied by the implementation of a biometric information retention and destruction policy. *See* 740 ILCS 14/15(a). CDS did just that through its 2017 Notice, which specifically describes the purpose of the fingerprint data captured by the finger scan timeclock technology. (Ex. A, Ex. 1.) The Notice sets forth the limited purpose of keeping time so that employees can be paid, and states that the data will not be used for any other purpose. The Notice also states that data is maintained throughout the course of an individual's employment, but permanently deleted *as soon as* the employment relationship terminates. (*Id.*) Likewise, the 2022 Consent Plaintiff executed was entirely consistent, explaining the purpose of capturing fingerprint data was identification of employees for time and attendance purposes. (Ex. A, Ex. 2.).

Further, Section 15(b) is satisfied by providing notice and obtaining consent before an individual's biometric data is collected. The Notice covers the technology at issue in this case, which collects fingerprint data stored as an encrypted algorithm. In July 2017, Plaintiff executed

7

the Notice of Biometric Data Collection, affirming his acknowledgement that he read the Notice and was fully aware of how CDS would use biometric data, and that he consented to CDS collecting said data. (Ex. A, ¶ 12.) He did the same with the 2022 Consent, where he was explicitly notified that he was not required to provide biometric identifiers or information, but consented to doing so after acknowledging he had read the Consent. (Ex. A, ¶ 14.).

The Notice and Consent clearly satisfy all elements of Section 15(b). First, the Notice informed Plaintiff that the finger scan timeclock technology scanned an employee's fingerprint in order to identify them for purposes of clocking in and out. *See* 740 ILCS 14/15(b)(1). Second, the Notice informed Plaintiff that the purpose of collecting this information is having an employee clock in and out so they can be paid on an hourly basis, and that the data would only be stored as long as the individual remained an employee. *See* 740 ILCS 14/15(b)(2). Third, Plaintiff expressly and voluntarily consented to the Notice consistent with respect to that information when he executed the Notice on July 24, 2017. *See* 740 ILCS 14/15(b)(3). Nevertheless, Plaintiff filed this lawsuit, alleging CDS violated Sections 15(a) and (b) by "failing to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored" and for what purpose and term as required by BIPA. (Compl., ¶ 35.) This is unavailing and Plaintiff's Complaint must be dismissed insofar as it alleges violations of BIPA Sections (a) and (b).

### 2. BIPA Section (c).

To the extent Plaintiff alleges CDS violated Section (c) of BIPA—which is not clear from the Complaint—this claim also fails. Plaintiff's only reference to Section (c) in the Complaint is the conclusory allegation that states, "By obtaining and operating an employee timekeeping system which uses biometrics, Defendant profited from Plaintiff's and the Class members' biometric identifiers and biometric information in violation of 740 ILCS 14/15(c)." (Compl. ¶ 36.) However, Plaintiff does not state *a single fact* to support this allegation. The Complaint is entirely void of any fact that CDS

benefitted financially or otherwise profited from Plaintiff's fingerprint data. In fact, the Notice indicates the data is collected for the sole purpose of having an employee clock in and out so CDS can pay their employees—not profit from them. (Ex. A, Ex. 1.).

Plaintiff is not excused from the long-established pleading requirements set forth in *Iqbal* and *Twombly* simply because he purports to allege BIPA violations. It is not enough to restate a portion of Section (c) of BIPA as a conclusory allegation. Indeed, Plaintiff has simply failed to state a claim against CDS for a violation of Section (c) because he has not alleged any facts whatsoever to support the conclusion that CDS profited from Plaintiff's biometric identifiers and biometric information. Accordingly, any Section (c) claim Plaintiff has attempted to state against CDS must be dismissed.

### 3. BIPA Section (d).

Likewise, Plaintiff's Complaint makes a single, unsupported reference to Section (d) of BIPA without clearly alleging a BIPA violation. To the extent Plaintiff alleges CDS violated BIPA based on failure to obtain consent pursuant to Section (d), his Complaint must be dismissed. As outlined above, Section (d) governs the *disclosure* of biometric information and biometric identifiers. However, Plaintiff's Complaint does not contain a single allegation related to disclosure of his biometric information or biometric identifiers. He alleges only that CDS collected his biometric information without obtaining his prior consent. (Compl. ¶¶ 32-35.) Because the only allegation with respect to the disclosure of information is the conclusory allegation set forth in Paragraph 35(f), which merely alleges CDS failed to obtain informed consent to disclose or disseminate his information, his Section (d) claim fails to meet the clearly established pleading requirements enforced by this Court. Thus, any Section (d) claim Plaintiff has attempted to state against CDS must also be dismissed.

9

**B.    Plaintiff Waived All Claims Relating to the Finger Scan Timeclock Technology.**

Plaintiff is estopped from brining this lawsuit because he unequivocally waived his claims in this action by executing the 2017 Notice:

Your signature below acknowledges that you have read this communication, are fully aware of how CDS will use confidential biometric data, and that you are providing your consent for CDS to collect said data.

Employees Signature _Steven Newbern_

Employee's Printed name _Steven Newbern_

Date: _7/24/17_

(Ex. A, Ex. 1.)

Further, Plaintiff is estopped from brining his claims because he unequivocally waived his claims *again* by executing the 2022 Consent:

The undersigned employee acknowledges that he/she has received the attached *Biometric Information Privacy Policy*, and that he/she voluntarily consents to the Company's, its vendors', and/or the licensor of the Company's time and attendance software's collection, storage, and use of biometric data through a biometric time clock, including to the extent that it utilizes the employee's biometric identifiers or biometric information as defined in BIPA, and voluntarily consents to the Company providing such biometric data to its vendors, and/or the licensor of the Company's time and attendance software.

_Steven Newbern_                    4-20-22

Employee Signature                   Date

_Steven Newbern_

Employee Name (print)

(Ex. A, Ex. 2.)

10

It is well settled that "[i]ndividuals generally may waive substantive rules of law, statutory rights, and even constitutional rights enacted for their benefit" if that waiver is "knowing, voluntary, and intentional." *In re Estate of Ferguson*, 730 N.E.2d 1205, 1210 (Ill. App. 2000); *see also RTP LLC v. Orix Real Estate Capital, Inc.*, 2014 WL 12696867, at *1 (N.D. Ill. Dec. 1, 2014). As such, consenting to the collection, storage, and use of biometric data after being advised that an employer would collect "fingerprint data" is an effective waiver and release of statutory rights that defeats a plaintiff's claim. *See Ferguson*, 730 N.E.2d at 1210; *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 326, 821 N.E.2d 269, 281 (Ill. 2004) ("Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right.").

Likewise, it is well established that this Court must apply contract law principles to the release at issue and look to the plain and ordinary meaning therein with the primary objective of giving effect to the parties' intent. *See Badette*, 2014 IL App (1st) 133004, at ¶ 17, 22 N.E.3d at 1215; *Krilich v. Am. Nat. Bank & Tr. Co. of Chi.*, 334 Ill. App. 3d 563, 574–75, 778 N.E.2d 1153, 1164 (2002) ("A court must construe the meaning of a contract by examining the language and may not interpret the contract in a way contrary to the plain and obvious meaning of its terms."). These principles apply with equal force to BIPA claims. *See Ferguson*, 730 N.E.2d at 1210.

Here, Plaintiff knowingly consented to CDS collecting and using his biometric data. (Ex. A, Ex. 1; Ex. A, Ex. 2.) There is no question that he waived all BIPA claims relating to the finger scan timeclock technology. His claims in this lawsuit are therefore barred and must be dismissed.

**C.      Plaintiff's Claims Must Be Dismissed to Avoid a Non-Sensical Result and Dangerous Precedent.**

Allowing these claims against CDS to proceed notwithstanding its compliance with BIPA would be an absurd and inequitable result. In providing Plaintiff with the Notice he executed in July 2017, CDS specifically acted in an attempt to comply with the requirements of BIPA. To

11

penalize CDS for its actions taken specifically to comply with BIPA would contravene public policy.

Moreover, allowing these claims to proceed against CDS sets a dangerous precedent against defendant employers—who are the primary target in BIPA lawsuits—in an area of the law that is already precariously tilted in favor of plaintiff employees. If Plaintiff's claims survive, it would effectively expose CDS to potentially astronomical damages, even though it complied with the requirements of BIPA and Plaintiff released the very claims at issue here. Plaintiff should not be allowed to revoke his consent or argue that his executed Notice and Consent are insufficient to obtain a windfall of $1,000 or $5,000 for each time the technology was allegedly used pursuant to BIPA. Plaintiff was properly informed about and consented to the use of the finger scan timeclock technology at issue here. CDS complied with BIPA and provided the Notice and Consent, which Plaintiff executed on two separate occasions. The conclusion is simple: Plaintiff's claims must be dismissed because CDS complied with BIPA, and Plaintiff has waived any claims under the statute.

## V.    CONCLUSION

Plaintiff's Amended Class Action Complaint should be dismissed in its entirety because Plaintiff fails to state a plausible claim for violation of BIPA Sections (a) through (d). CDS requests this Court dismiss Plaintiff's Complaint with prejudice and grant such further relief as this Court deems just and proper.

Dated:  March 29, 2024                          Respectfully submitted,

                                                /s/ *Becky M. Christensen*
                                                One of Its Attorneys


Becky M. Christensen, Bar No. 6305626
bchristensen@littler.com
Elizabeth Stevenson, Bar No. 6343350
lastevenson@littler.com
LITTLER MENDELSON, P.C.
600 Washington Avenue, Suite 900
St. Louis, MO  63101
Telephone:     314.659.2000
Facsimile:      314.659.2099


## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2024, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system and served upon the following:

> Timothy P. Kingsbury
> Andrew T. Heldut
> Jordan Frysinger
> MCGUIRE LAW, P.C.
> 55 W. Wacker Drive, 9th Fl.
> Chicago, IL 60601
> Tel: (312) 893-7002
> tkingsbury@mcgpc.com
> aheldut@mcgpc.com
> jfrysinger@mcgpc.com

*Attorneys for Plaintiff*

                                                /s/ *Becky M. Christensen*

4862-4915-6525.5 / 079261-1030