## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| STEVEN NEWBERN, individually and on behalf of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) | Case No. 3:23-cv-03871-RJD |
| ) | |
| v. ) | Hon. Magistrate Reona J. Daly |
| ) | |
| CUSTOMIZED DISTRIBUTION SERVICES, INC., a Pennsylvania corporation, ) ) ) ) | |
| *Defendant*. ) ) | |

## PLAINTIFF'S *UNOPPOSED* MOTION & MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: October 15, 2025

Evan M. Meyers
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 West Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
aheldut@mcgpc.com

*Counsel for Plaintiff*
*and Proposed Class Counsel*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................2

   A.  Illinois' Biometric Information Privacy Act ...............................................2

   B.  Plaintiff's Factual Allegations ....................................................................3

   C.  Procedural History .....................................................................................3

   D.  The Parties' Settlement Negotiations ........................................................4

III.  THE PROPOSED SETTLEMENT ......................................................................5

   A.  The Settlement Class ..................................................................................5

   B.  Monetary Relief And The Settlement Fund ..............................................5

   C.  Notice And Settlement Administration ......................................................6

   D.  Exclusion and Objection Procedure ..........................................................7

   E.  Attorneys' Fees And Service Award ..........................................................8

   F.  Release ........................................................................................................8

   G.  *Cy Pres* Distribution...................................................................................8

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
     SETTLEMENT AND DIRECT NOTICE TO THE PROPOSED SETTLEMENT
     CLASS ..................................................................................................................8

   A.  The Settlement Class Can Be Certified For Settlement Purposes ...........9

      1.   The Settlement Class is sufficiently numerous...................................9

      2.   Common questions of law and fact predominate ...........................10

      3.   Plaintiff's claims are typical of the Settlement Class he seeks to represent....12

      4.   Plaintiff and Class Counsel have capably represented the Settlement Class and

will continue to do so ................................................................................. 13

5.  A class action is a superior method of resolving this controversy ................. 14

6.  The Settlement Class is ascertainable ............................................................ 16

**B. The Proposed Settlement Warrants Preliminary Approval** ................................ 16

1.  Plaintiff and Class Counsel have adequately represented the Settlement
    Class ............................................................................................................... 17

2.  The Settlement was negotiated at arm's length ............................................... 18

3.  The relief provided for the class is exceptional given the serious risks should
    this case proceed to trial .............................................................................. 19

    a.  The benefits of settlement outweigh the cost, risk, and delay of further
        litigation .................................................................................................. 20

    b.  The proposed method of distributing relief to the Settlement Class is
        effective ................................................................................................... 21

    c.  The terms of the requested attorneys' fees are reasonable ................. 22

    d.  There are no side agreements separate from the Settlement .............. 23

4.  The Settlement treats all Settlement Class Members equitably ..................... 24

**C. The Court Should Approve The Form And Manner Of Notice Contemplated By
The Settlement, And Order That Notice Be Disseminated To The Settlement
Class** ...................................................................................................................... 24

V.   **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ..... 26

VI.  **PROPOSED SCHEDULE** ........................................................................................ 27

VII. **CONCLUSION** ........................................................................................................ 27

# TABLE OF AUTHORITIES

**Case**                                                                   **Page(s)**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 15

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................. 18

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455, 460 (2013) ............................................................................ 9

*Arreola v. Godinez*,
    546 F.3d 788, 794 (7th Cir. 2008) ................................................................. 9

*Barnes v. Air Line Pilots Ass'n, Int'l*,
    310 F.R.D. 551, 557 (N.D. Ill. 2015) .............................................................. 9

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018, 1029 (7th Cir. 2018) .............................................................. 11

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360, 374 (7th Cir. 2015) ................................................................. 10

*Bynum v. Cmty. Loans of Am., Inc.*,
    20-CV-1564-PP, 2022 WL 10073493 (E.D. Wis. Oct. 17, 2022) ............................. 18

*Califano v. Yamasaki*,
    442 U.S. 682, 701 (1979) ............................................................................ 15

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721, 725 (7th Cir. 2011) ................................................................. 12

*CE Design v. Beaty Constr., Inc.*,
    No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) .................................. 24

*Charvat v. Valente*,
    12-CV-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ............................. 18, 21

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................. 24

*Fischer v. Instant Checkmate LLC*,
    No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ........................... 11, 12

*Gen. Tel Co. of Sw. v. Falcon*,
    457 U.S. 147, 155 (1982) ............................................................................ 15

*Goldsmith v. Tech. Sols. Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)................................20

*Golon v. Ohio Savs. Bank*,
    No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999)................................11

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583, 592 (7th Cir. 2011) .......................................................13

*Howard v. Cook Cnty. Sheriff's Off.*,
    989 F.3d 587, 607 (7th Cir. 2021) .................................................10, 12

*Hudson v. Libre Tech., Inc.*,
    No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020).........................21

*Lechuga v. Elite Eng'g, Inc.*,
    559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) ...............................................13

*Maxwell v. Arrow Fin. Servs., LLC*,
    No. 03-cv-1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ................................14

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802, 815 (7th Cir. 2012) .......................................................11

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
    No. 18 C 1526, 2020 WL 4345418 (N.D. Ill. July 29, 2020)................................26

*Muir v. Nature's Bounty (DE), Inc.*,
    No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)................................12

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654, 659 (7th Cir. 2015) ....................................................9, 19

*Mulvania v. Sheriff of Rock Island Cnty.*,
    850 F.3d 849, 859 (7th Cir. 2017) ........................................................9

*Murray v. E*Trade Fin. Corp.*,
    240 F.R.D. 392, 396 (N.D. Ill. 2006) ...................................................10

*Parker v. Risk Mgmt. Alternatives, Inc.*,
    206 F.R.D. 211, 213 (N.D. Ill. 2002) ...................................................13

*Randolph v. Crown Asset Mgmt., LLC*,
    254 F.R.D. 513, 517 (N.D. Ill. 2008) ...................................................10

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584, 598 (7th Cir. 1993) .........................................................13

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019)  ..................17, 18, 19

iv

*Spano v. The Boeing Co.*,
     633 F.3d 574, 586 (7th Cir. 2011) ......................................................................12

*Starr v. Chi. Cut Steakhouse*,
     75 F. Supp. 3d 859, 874 (N.D. Ill. 2014).............................................................13

*Suchanek v. Sturm Foods, Inc.*,
     764 F.3d 750, 756 (7th Cir. 2014) ......................................................................10

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.*,
     23-CV-16404, 2024 WL 3425751 (N.D. Ill. July 16, 2024) ..........................16, 17, 18, 22, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
     577 U.S. 442, 453 (2016) ..................................................................................11

*Wahl v. Midland Credit Mgmt., Inc.*,
     243 F.R.D. 291, 301 (N.D. Ill. 2007) ..................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338, 351 (2011) ..................................................................................10

*Young v. Rolling in the Dough, Inc.*,
     No. 17-cv- 07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020).........................18, 21

**Miscallanoeous Authority**

4 Newberg on Class Actions § 13:1 (6th ed.)........................................................8

2 Newberg on Class Actions § 4:69 (6th ed. 2022)...............................................15

*Manual for Complex Litig.,* § 21.632 (4th ed. 2004)...............................................8

Fed. R. Civ. P. 23.....................................................................................*passim*

740 ILCS § 14/1 .......................................................................................*passim*

## I.    <u>INTRODUCTION</u>

The Parties in this putative class action, brought under the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq.* ("BIPA"), have reached a proposed settlement – negotiated with the assistance of Hon. Diane Joan Larsen (Ret.) of JAMS Chicago – that provides Settlement Class Members[1] with *pro rata* cash payments to be distributed in full from a Settlement Fund of $352,800.00, based on $900 gross for each of the approximately 392 individuals in the Settlement Class, following deductions for fees and costs associated with the Settlement. No portion of the fund will revert to Defendant Customized Distribution Services, Inc. ("Defendant").

By any measure, this Settlement is a great outcome for the Settlement Class Members. Class Counsel anticipate that net individual payments, after deductions, will be approximately $500-$550. Further, there is no claims process nor any other extra steps that Settlement Class Members need to complete to obtain their payment. Upon final approval, each Settlement Class Member will be directly mailed a payment unless they choose to opt out of the Settlement.

If approved, this Settlement will deliver substantial relief, as well as certainty and closure, to what would likely continue to be highly contentious, costly, and lengthy litigation regarding the alleged unlawful collection, use, disclosure and dissemination of individuals' biometric identifiers and/or biometric information by Defendant. The terms of this Settlement are especially noteworthy given the real risks involved in continued litigation here. While Plaintiff maintains that, absent a settlement, he would be able to secure class certification and prevail on the merits at trial, success is not assured, and Defendant has demonstrated a willingness to vigorously defend this litigation, and Defendant continues to deny any wrongdoing. Despite these risks, Plaintiff and Class Counsel zealously and capably prosecuted this action, ultimately leading to the prompt and just resolution of this litigation for the well-deserved benefit of the Settlement Class Members.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the same meaning given to them as in the Settlement Agreement attached hereto as Exhibit 1.

1

The proposed Settlement readily satisfies the prerequisites for preliminary approval under Fed. R. Civ. P. 23(e) and applicable precedent. Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the proposed Settlement, appoint Plaintiff Steven Newbern as the Class Representative to represent the Settlement Class, certify the proposed Settlement Class for settlement purposes, appoint Plaintiff's attorneys as Class Counsel, approve the form and manner of the proposed notices and direct that notice be provided to Settlement Class Members, and schedule a Final Approval and Fairness Hearing.

## II.    **BACKGROUND**

### A.    **Illinois' Biometric Information Privacy Act**

BIPA is an Illinois statute that provides individuals with certain protections for their biometric information. To effectuate its purpose, BIPA requires private entities that seek to use biometric identifiers (e.g., fingerprints and handprints) and biometric information (any information derived from a biometric identifier which is used to identify an individual) to:

(1) Inform the person whose biometrics are to be collected in writing that his biometrics will be collected or stored;

(2) Inform the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometrics are being collected, stored and used;

(3) Receive a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometrics; and

(4) Publish a publicly available retention schedule and guidelines for permanently destroying the collected biometrics. 740 ILCS § 14/15.

BIPA was enacted in large part to protect individuals' biometrics, provide them with a means of enforcing the statutory rights, and regulate the practice of collecting, using and disseminating such sensitive biometric information.

**B.    Plaintiff's Factual Allegations**

Defendant is a national provider of third-party logistics and warehousing services. Plaintiff has alleged that while working for Defendant beginning in July 2017, Defendant required Plaintiff to clock in and out of his work shifts using biometric time-tracking devices. Plaintiff alleges that Defendant's devices not only stored Plaintiff's biometric scans themselves, but also transmitted data derived from those scans to Defendant's third-party timekeeping, payroll, and data storage vendors. Plaintiff alleges that despite collecting and possessing Plaintiff's biometric data, Defendant failed to provide him with adequate written disclosures informing that Defendant was collecting and using his biometrics or explaining the purpose and length of term for which Defendant would use the same, and Plaintiff did not provide written consent to Defendant's use of his biometric data in alleged violation of Section 15(b) of BIPA, 740 ILCS 14/15(b). Plaintiff further alleges that Defendant failed to obtain Plaintiff's consent to disclose or otherwise disseminate his biometric data to its third-party vendors. Accordingly, Plaintiff's Complaint asserts claims against Defendant under Sections 15(b) and 15(d) of BIPA. Defendant denies all material allegations and claims of wrongdoing that Plaintiff has asserted in this Litigation, and denies that it violated BIPA.

**C.    Procedural History**

On October 26, 2023, Plaintiff Newbern filed his initial Class Action Complaint against Defendant in the Circuit Court of the Third Judicial Circuit in Madison County, Illinois. On December 7, 2024, Defendant removed the Litigation to the U.S. District Court for the Southern District of Illinois, where the case was assigned to this Court. On January 31, 2024, Plaintiff amended his Class Action Complaint to allege violations of sections 15(a), (b), and (d) of BIPA: failure to

provide notice of, and obtain consent for, the collection and dissemination of biometrics, and failure to make publicly available a written retention schedule for the stored biometrics.

On March 29, 2024, Defendant moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing, among other things, that: (1) Plaintiff provided valid consent to Defendant's collection of his biometrics, (2) Plaintiff waived his BIPA claims, and that (3) Defendant otherwise complied with BIPA's requirements. On June 20, 2024, this Court denied Defendant's Motion to Dismiss as to Plaintiff's 15(b) and 15(d) claims and ordered jurisdictional briefing on Plaintiff's 15(a) claim. The case then proceeded to discovery. On December 12, 2024, the Court bifurcated the case and remanded Plaintiff's section 15(a) claim to the Circuit of Madison County, Illinois. On December 23, 2024, Plaintiff filed his operative Second Amended Complaint (the "Complaint"). On January 1, 2025, Defendant filed its Answer to Plaintiff's Complaint. The Parties then engaged in written discovery, issuing discovery and providing responses to discovery.

### D.    The Parties' Settlement Negotiations

During discovery, the Parties conferred and decided to explore the possibility of resolution. The Parties agreed to attend a mediation and stay the federal court proceedings pending the mediation. The Parties agreed to select the Hon. Diane Joan Larsen (Ret.) of JAMS Chicago as mediator. Judge Larsen is a former Illinois Judge serving for 14 years in the Law and Chancery Divisions of the Circuit Court of Cook County. (*See* Declaration of Evan M. Meyers, attached hereto as Exhibit 2, ¶ 2.)

In advance of the mediation, Plaintiff and Defendant exchanged information to facilitate the negotiation process. (*Id.* ¶ 2.) On May 22, 2025, counsel for the Parties participated in an arm's-length, full-day mediation session before Judge Larsen. (*Id.*) With the help of Judge Larsen, the Parties successfully reached an agreement in principle to resolve the Litigation.

Over the weeks and months that followed the mediation, the Parties negotiated the contours of the Settlement Agreement, including the settlement structure, the various provisions governing implementation of the Settlement Agreement, and the form of class notice. (*Id.*) Once negotiations concluded, the Parties executed the final Settlement Agreement which is now being submitted to the Court for preliminary approval. (*Id.*)

## III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The proposed Settlement seeks certification of a Settlement Class of all individuals on the Settlement Class List who do not timely and validly exclude themselves from the Settlement Class. The Settlement Class List includes:

> All individuals who worked for Defendant Customized Distribution Services, Inc. ("CDS") in Illinois and used a timekeeping system that captured a portion of their fingertip during the class period of January 19, 2019, to the date of entry of the Preliminary Approval Order.

(Ex. 1, ¶ 50.) Excluded from the Settlement Class List are all individuals who executed a CDS "Biometric Information Privacy Employee Consent Form" prior to using Defendant's timekeeping system; the Court and staff to whom this case is assigned and any member of the Court's or staff's immediate family; and any individual who has previously signed a general release of claims against Defendant or who has already released their claims previously asserted in any other related actions that have been dismissed prior to the Agreement's effective date. (*Id.* ¶ 50.) These exclusions are standard in class action settlements and do not materially affect the size or makeup of the Settlement Class.

### B.    Monetary Relief And The Settlement Fund

The Settlement provides for the establishment of a non-reversionary settlement fund in the amount of $900 per Settlement Class Member, which is $352,800.00 based on 392 Settlement Class Members. (Ex. 1, ¶¶ 46, 54, 59.) All Settlement Class Members are eligible to receive a payment

from the fund, and there is no claims submission process or other steps the Settlement Class Members need to take to obtain their payment. (*Id.* ¶ 54.b.) The fund will also be used to cover the fees and costs associated with implementation of the Settlement, including payment of Administrative Expenses, any Service Award approved by the Court, and any Court-approved Fee Award. (*Id.* ¶¶ 26, 54.b, 55.) After deductions for these amounts, the entire Net Settlement Amount will be distributed to the Settlement Class Members *pro rata*. (*Id.* ¶¶ 54.b, 55.) Based on Defendant's representation that the Class consists of 392 people, (*id.* ¶ 51), Class Counsel estimate that each Settlement Class Member will receive a net payment of approximately $500-$550.

### C.    Notice And Settlement Administration

The Parties have engaged Simpluris – a nationally recognized class action settlement administrator with substantial experience in privacy and employment-related matters – to assist with administering the Settlement. (*Id.* ¶ 45.) Simpluris will be responsible for carrying out the Settlement's Notice Plan subject to Class Counsel's supervision. (*Id.*). This includes mailing notices to Settlement Class Members, issuing checks to the Settlement Class Members, and establishing and maintaining the Settlement Website. (*See, e.g., id.* ¶¶ 47, 55, 70-71.)

Settlement Class Members will be provided with direct notice of the Settlement by U.S. mail. (*Id.* ¶ 71.) Because the Settlement Class Members are all individuals who applied for employment with Defendant, are current or former employees of Defendant, or are workers assigned to work at Defendant's worksite through contracted staffing agencies, Defendant has agreed to create a class list containing last-known contact information and to provide that list to the Settlement Administrator to use in effectuating the Notice Plan. (*Id.* ¶ 70.)

The Settlement Administrator will also run each Settlement Class Member's contact information through the national change-of-address database to help determine the correct address for each Settlement Class Member. (*Id.* ¶ 71.c.) In the event of any undeliverable mailings, the

Settlement Administrator will perform a reverse-lookup to attempt to locate updated contact information and re-send the notice. (*Id.*)

Additionally, the Settlement Administrator will launch a Settlement Website containing all relevant information about the Settlement, including downloadable copies of the Settlement Agreement, important court filings, as well as a detailed Long Form Notice substantially in the form of Exhibit C of the Settlement Agreement, explaining the terms of the Settlement in greater detail. (*Id.* ¶¶ 47, 71.d.) The format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language, which clearly informs the Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to under the Settlement, how to object to or opt-out of the Settlement, and the amount of attorneys' fees that may be sought under the Settlement. (*See generally* Exhs. B-C to Settlement Agreement.)

Importantly, the settlement payments will be sent by the Settlement Administrator to the Settlement Class Members without requiring Settlement Class Members to submit a claim form or otherwise "opt in" to the Settlement. (*Id.* ¶ 54.b.)

### D.    Exclusion and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. (*Id.* ¶¶ 73, 75.) The procedures and deadlines for filing opt-out requests and objections will be explained on the Settlement Website and in the Long Form Notice, as well as in the Settlement Agreement itself. (*Id.* ¶¶ 74, 76; *see also* Exhs. B-C to Settlement Agreement.) The Notices also inform Settlement Class Members that there will be a final approval hearing, which will be their opportunity to appear and have their objections heard. (*Id.*). Similarly, the website and Long Form Notice will also explain that all Settlement Class Members will be bound by the release contained in the Settlement Agreement unless they properly exercise their right to exclude themselves. (*Id.*).

### E.   Attorneys' Fees And Service Award

Subject to Court approval, any award of attorneys' fees, costs, and expenses to Class Counsel is to be paid out of the Gross Settlement Fund. (*Id.* ¶ 87.) Class Counsel have agreed to limit their request for attorneys' fees to no more than 36% of the Settlement Fund, plus reasonable expenses, and the amount they seek will be disclosed to Settlement Class Members in the notices. (*Id.*) Plaintiff may also request a Service Award for the Class Representative of up to $6,000. (*Id.* ¶ 89.)

### F.   Release

In exchange for the relief described above, Settlement Class Members will provide Defendant and its affiliated entities with a release of all claims arising out of the allegations underlying the claims in this matter, as detailed in Section VIII of the Settlement Agreement. (*Id.* ¶¶ 40, 61-63.)

### G.   *Cy Pres* Distribution

In the event that any Settlement Class Members fail to cash their checks within 120 days after issuance, the residual funds from any uncashed checks will be distributed to one or more *cy pres* recipients proposed by the Parties and designated by the Court. (*Id.* ¶ 59.)

## IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT AND DIRECT NOTICE TO THE PROPOSED SETTLEMENT CLASS.

There are three stages for the approval of a class action settlement. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. Fed. R. Civ. P. 23(e); 4 Newberg on Class Actions § 13:1 (6th ed.); *see generally Manual for Complex Litigation (Fourth)* § 21.63 (2004).

At this first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are readily satisfied.

### A.    The Settlement Class Can Be Certified For Settlement Purposes.

Taking the second prong first, the Court can certify the Settlement Class for settlement purposes. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, the Settlement Class must satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, where, as here, certification is sought pursuant to Rule 23(b)(3), it must be shown that (i) common questions of law or fact predominate over individual issues, and (ii) a class action the superior device to resolve the claims. *Id.*

Finally, Rule 23 also contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all relevant Rule 23(a) and (b)(3) prerequisites, as well as Rule 23's implicit ascertainability requirement.

### 1.    The Settlement Class is sufficiently numerous.

To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a 40 people is usually sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017); *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (collecting cases).

Here, Defendant's records and the information exchanged during informal discovery show that the proposed Settlement Class includes approximately 392 individuals. Thus, the Settlement

Class is large enough that individual joinder would be impractical. *See Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) ("As few forty class members can render joinder impractical, especially when the members are 'widely scattered and their holdings are generally too small to warrant undertaking individual actions.'" (quoting *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006)). The numerosity requirement is therefore met.

### 2.    Common questions of law and fact predominate.

Rule 23(a) next requires that the claims of a certified class present at least one common question of law or fact. Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Even a single common question will do") (cleaned up). Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement – that common questions "predominate over any questions affecting only individual members" – are closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately").

Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Dukes*, 564 U.S. 338, 350). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (internal quotations omitted). Therefore, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). "[W]here "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," commonality exists. *Id.*

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021). Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis … [since s]uch proof

obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). "Predominance is satisfied "when common questions represent a significant aspect of [the] case and can be resolved for all members of [the] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

In this case, there are numerous common questions of law and fact. All members of the proposed Class share common statutory BIPA claims arising out of standardized conduct: Defendant's alleged collection, use, and dissemination of Settlement Class Members' biometrics without obtaining valid consent. Proving a BIPA violation across the Settlement Class would require the resolution of the same central factual and legal issues, including: (1) whether the information taken from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; and (2) whether such information was taken and used in violation of BIPA. These common questions are central to liability and can be answered on a class-wide basis based on common evidence. Thus, these questions predominate over any individual issues that may exist.

Apart from these common and predominating questions concerning the elements of the Settlement Class Members' claims, the claims also potentially implicate additional common issues pertaining to Defendant's defenses. These include whether Defendant has a viable affirmative defense to liability under BIPA through its consent forms. (Dkt. No. 28.) Determining the validity of such defenses will similarly rely on common proof of Defendant's conduct and on resolution of broad legal questions applicable to the Settlement Class as a whole, not circumstances unique to any individual. *See Fischer v. Instant Checkmate LLC,* No. 19-cv-04892, 2022 WL 971479, at *8–9 (N.D. Ill. Mar. 31, 2022) (citing *Tyson Foods, Inc.*, 577 U.S. at 453).

11

Because answering each of these liability and defense questions would resolve all Settlement Class Members' claims in one stroke, and no individualized issues could defeat this overwhelming commonality, predominance is satisfied. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (recognizing that predominance is satisfied when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues") (internal quotations omitted). Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### 3.    Plaintiff's claims are typical of the Settlement Class he seeks to represent.

The next certification prerequisite – typicality – requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "As a general matter, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). In other words, when the basis of the suit is the defendant's systematic business practices toward the named Plaintiff and the members of the settlement class, typicality is generally satisfied. *See Fischer*, 2022 WL 971479, at *7 ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

Here, Plaintiff asserts the same claims based on the same facts and legal theories as the other Settlement Class Members. Nothing separates Plaintiff's claims from the claims of the Settlement Class Members he seeks to represent. Plaintiff's allegations that Defendant violated BIPA by failing to provide him with adequate written disclosures and that his biometrics were collected and

disseminated is precisely the violative conduct Defendant allegedly carried out with respect to every one of the other Settlement Class Members using the same equipment. Moreover, Plaintiff and the putative Settlement Class Members all seek the same damages. Thus, Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002). Accordingly, the typicality requirement of Rule 23(a) is satisfied for purposes of preliminary approval.

### 4.    Plaintiff and Class Counsel have capably represented the Settlement Class and will continue to do so.

The final Rule 23(a) prerequisite – adequacy – requires a finding that the Class Representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement comprises two parts: (1) adequacy of the named plaintiff as representative of the proposed class's myriad members, and (2) adequacy of the proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) (citing *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Here, Plaintiff and proposed Class Counsel are more than adequate.

To be an adequate representative, "the named Plaintiffs must not have 'antagonistic or conflicting claims.'" *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). Where "the claims of the named Plaintiffs are essentially identical to those of the proposed class members," and "[t]here are no individual defenses or other claims that would in any way impede the named Plaintiffs' ability to adequately represent the interest of the class members," the named plaintiff is an adequate class representative. *Starr*, 75 F. Supp. 3d at 874.

Here, Plaintiff has no conflicts nor adverse interests with the Settlement Class, as his claims and interests in this litigation are completely aligned with the Settlement Class Members that he seeks to represent.    Plaintiff    suffered    the    same    alleged    injury    as    every

other member of the Settlement Class, and his interest in redressing Defendant's alleged violations of BIPA is identical to the interests of all other members of the Settlement Class. To pursue that interest, Plaintiff retained counsel, filed an action, vigorously prosecuted the case on behalf of the Class, and considered and approved the Settlement terms.

Likewise, proposed Class Counsel satisfy the adequacy requirement. Plaintiff's counsel have extensive experience in complex class action litigation and consumer privacy litigation in particular, including many cases involving BIPA. (Meyers Decl., Ex. 2, ¶ 5). Plaintiff's counsel have been appointed as class counsel in numerous class actions in federal courts in Illinois, in Illinois state courts, and in courts throughout the country. (*Id.*) (identifying cases). Accordingly, because both Plaintiff and Class Counsel will fairly and adequately protect the interests of the Class, the adequacy requirement – like the other Rule 23(a) factors – is satisfied.

**5.      A class action is a superior method of resolving this controversy.**

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. A class action is superior to multiple individual actions where "litigation costs are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell v. Arrow Fin. Servs., LLC.*, No. 03-cv-1995, 2004 WL 719278, at \*6 (N.D. Ill. Mar. 31, 2004). When a large, relatively diffuse class is allegedly entitled to a small sum of money on account of the uniform, widespread actions of a particular defendant, a class action is often the superior method of adjudicating the particular controversy. *See Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 301 (N.D. Ill. 2007) (finding superiority satisfied where the defendant "engaged in standardized conduct . . . that affected many consumers" but individual claims "would likely be too small to vindicate through an individual suit"). That is true here. Given the relatively small damages awards available under BIPA, individual class members have little interest in controlling the prosecution of their individual claims. *See* 2

Newberg on Class Actions § 4:69 (6th ed. 2022) ("representative litigation is superior" when class members' claims "may be so small that it would be a waste of their time and/or resources to litigate individually"). Unsurprisingly, there are no other BIPA cases pending against Defendant, which is strong evidence that individual class members lack a sufficient incentive in pursuing individual litigation. *See id* § 4:70.

Additionally, many Settlement Class Members may not have access to competent counsel willing to invest the time and resources to prosecute their claims. Absent a class action, the only option is to bring many small, individual actions resulting in minimal recovery – just $1,000 per negligent violation under BIPA, 740 ILCS 14/20(1) – so it is unlikely that the Settlement Class Members would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class Members' claims as part of a classwide settlement will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion[.]" *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

Moreover, because the Class would be certified for settlement purposes, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Court can resolve the claims of approximately 392 similarly situated individuals in one stroke, substantially serving "economies of time, effort, and expense, and promot[ing] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615 (quoting Fed. R. Civ. P. 23 advisory committee's

notes). Accordingly, superiority is satisfied and the Court should provisionally certify the Class for purposes of settlement.

### 6. The Settlement Class is ascertainable.

In addition to satisfying the explicit requirements of Rule 23(a) and (b), the proposed Settlement Class satisfies Rule 23's implicit ascertainability requirement, which requires that the class "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *T.K. through Leshore v. Bytedance Tech. Co., Ltd.*, No. 19-cv-7915, 2022 WL 888943, at *3 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*, 795 F.3d at 654).

Here, the Settlement Class is objectively defined, with membership turning on whether an individual (1) worked for Defendant in Illinois and (2) used a timekeeping system that captured a portion of their fingertip during the class period of January 19, 2019 and the date of preliminary approval. (Ex. 1 ¶ 50). This definition is, as required, clear and based on objective criteria. And although not required for purposes of ascertainability, the Settlement Class Members have been specifically identified through Defendant's employment and personnel records for purposes of compiling the class list. (Ex. 1 ¶ 51, 70.)

Because the proposed Settlement Class satisfies all of Rule 23's explicit requirements for certification, as well as the implicit ascertainability requirement, it should be certified for the purpose of settlement and for entering final judgment after final approval, if granted.

### B. The Proposed Settlement Warrants Preliminary Approval.

In addition to showing that the Settlement Class is certifiable, the Parties must also show that the Court "will likely be able to . . . approve the [settlement] proposal under Rule 23(e)(2)." Fed. R.

Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the Settlement is "fair, reasonable, and adequate" after considering whether: (A) the Class Representative and Class Counsel have adequately represented the class; (B) the Settlement was negotiated at arm's length; (C) the relief provided to the Settlement Class is adequate; and (D) the Settlement treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The proposed Settlement readily satisfies these requirements.

### 1. Plaintiff and Class Counsel have adequately represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes"). Ultimately, this factor is satisfied where the named plaintiff "participated in the case diligently . . . [a]nd class counsel fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate information base' while negotiating for the settlement," *T.K.*, 2022 WL 888943, at *11 (quoting 2018 Committee Notes).

Here, Plaintiff has diligently participated in his case, including by helping Class Counsel investigate his claims under the BIPA, assisting in the preparation of the complaint, becoming familiar with the case generally, responding to discovery, and reviewing and approving the Settlement Agreement before execution. Plaintiff also stood ready to participate in extensive discovery had this case not settled. In other words, Plaintiff has and continues to adequately represent the Settlement Class he seeks to represent.

Class Counsel's performance in this case likewise satisfies this factor. They "fought hard throughout the litigation," opposed Defendant's attempts to dismiss the case, investigated Plaintiff's

and the Class's claims, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. Prior to settling, the Parties exchanged information and briefing as part of the mediation process, providing Class Counsel with "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943, at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting that the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case"). The results achieved follow from this diligence and preparation, demonstrating that the proposed Settlement Class was adequately represented.

### 2.    The Settlement was negotiated at arm's length.

The second Rule 23(e)(2) factor – whether the settlement was negotiated at arm's length – addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. The arm's-length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943, at *11 (internal quotation omitted).

As an initial matter, the fact that the Parties' negotiations spanned many months is indicative of arm's-length negotiations. (*See* Meyers Decl. ¶ 2); *Bynum v. Cmty. Loans of Am., Inc.*, 20-CV-1564-PP, 2022 WL 10073493, at *2 (E.D. Wis. Oct. 17, 2022) (the fact that the settlement was negotiated "over a period of numerous months" is evidence of arm's-length negotiations) (quotations omitted). And once the Parties did agree to more formal negotiations, those discussions were overseen by an experienced and impartial mediator. "The best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943, at *11 (internal quotations omitted). In this case, Judge Larsen's assistance both during and after the full-day mediation was instrumental in bringing this case to a negotiated resolution. *See, e.g.*, *Charvat v. Valente*, 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019); *Young v. Rolling in the*

18

*Dough, Inc.*, No. 17-cv- 07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

What's more, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: the Settlement Fund is non-reversionary and contains no provisions that might suggest fraud or collusion. *See Snyder*, 2019 WL 2103379, at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). In a similar vein, the release is not overbroad; Defendant is not getting any release that it is not paying for, and the release is tethered to the factual underpinnings of the lawsuit. (Ex. 1 ¶ 40.) Thus, there was no collusion between Class Counsel and Defendant.

### 3. The relief provided for the class is exceptional given the serious risks should this case proceed to trial.

The next Rule 23(e)(2) factor – whether "the relief provided for the class is adequate" – includes four considerations to take into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

a.    **The benefits of settlement outweigh the cost, risk, and delay of further litigation.**

The Settlement's benefits are an excellent result for the Settlement Class Members when balanced against the downsides of continued litigation. The Settlement Class faced significant obstacles above and beyond the risks inherent in any trial or appeal, and this Settlement secures immediate relief rather than forcing the Settlement Class to endure years of costly and contentious litigation. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later.")

First, the Settlement's monetary benefits are substantial. As stated above, the Settlement provides a fund of $352,800.00 based on $900 per person gross to be distributed to the approximately 392 individuals in the Settlement Class, prior to deduction of administrative costs, court-approved attorneys' fees, and the other expenses associated with the Settlement. Even after these deductions, Class Counsel anticipate that the Settlement Class Members will each receive approximately $500-$550. This per-person payment amount compares favorably with the likely risk-adjusted recovery if the Class prevailed at trial. 740 ILCS 14/20(1) (allowing prevailing plaintiffs to recover $1,000 for a negligent violation of BIPA). In similar BIPA cases brought by employees against their employers, courts have regularly approved settlements providing substantially the same or significantly less monetary relief than the proposed Settlement Fund here. See, e.g., *Quarles v. Pret a Manger (USA) Ltd.*, No. 20-cv-7179, Dkt. 53, (N.D. Ill. 2022) (finally-approved BIPA class settlement resulted in gross recovery of $850 per class member); *Davis, et al., v. Heartland Employment Services, LLC*, No. 19-cv-00680, Dkt. 130, (N.D. Ill. Oct. 25, 2021) (approving BIPA employment class action settlement with a gross payment of $500 per class member); *Jones v. CBC Rest. Corp.,* 19-cv-06736, Dkt. 53 (N.D. Ill., 2020) (approving BIPA timekeeping class action settlement with a gross payment of $800 per class member). This further underscores the strength of the Settlement.

20

Second, the Settlement's relief is even more notable given the significant costs, risks, and delay of continued litigation. While Plaintiff believes that he would prevail on the merits, he acknowledges that Defendant has firmly denied his material allegations and has raised strong defenses. For example, Defendant has produced BIPA-related consent forms allegedly signed by a significant proportion of the putative Settlement Class Members. (Dkt. No. 28.) These defenses, if successful, would result in Plaintiff and the proposed Settlement Class Members receiving materially less in compensation, or potentially no recovery whatsoever.

Even if Plaintiff prevailed on the merits with respect to these issues, he would also need to succeed in obtaining class certification, which would be highly contested. The prospect of adversarial class certification presents serious risks on its own. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc*., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. May 13, 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class.").

In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young*, 2020 WL 969616, at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."). The Settlement provides meaningful, immediate relief to the Settlement Class, avoiding potentially years of complex litigation and appeals with a risk of no recovery whatsoever.

**b.    The proposed method of distributing relief to the Settlement Class is effective.**

Next, the Settlement's simple distribution process further confirms the adequacy of relief. In evaluating the "method of distributing relief," courts assess whether the methods proposed for

processing claims are "so complex that they discourage class members from pursuing valid claims." *T.K.*, 2022 WL 888943, at *14. Here, that is not a concern because there is no claims process. The individual payments will be directly sent to the Settlement Class Members without requiring them to submit a claim form or otherwise "opt in" to the Settlement. (Ex. 1 ¶ 54.b.) This is not a claims-made settlement, and Defendant will pay the full amount of the Gross Settlement Fund with no possibility of any funds reverting back to Defendant. (*Id.* ¶ 59.)

### c.    The terms of the requested attorneys' fees are reasonable.

The next consideration under Rule 23(e)(2)(C) is "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, Class Counsel intends to petition the Court for a reasonable award of attorneys' fees after the Settlement Class has received notice of the Settlement. The Settlement's contemplated method of calculating attorneys' fees – the percentage-of-the-benefit method – is reasonable and appropriate, as is the Settlement's cap on the amount of attorneys' fees that may be sought (i.e., no more than 36% of the Gross Settlement Fund, plus expenses). *T.K.*, 2022 WL 888943, at *24 ("[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40 percent.") (quotations omitted).

The requested fee award, which Class Counsel will seek to justify in the motion that it will file after preliminary approval, is well in line with fee awards in other privacy cases and thus will adequately capture the hypothetical *ex ante* agreement that the Settlement Class would have entered into with proposed Class Counsel had they sought them out in the market, given the risks in the case. See, e.g., *Quarles v. Pret A Manger (USA) Limited,* No. 20-cv-07179, Dkt. 53 (N.D. Ill. May 4, 2022) (approving class counsel fee request for 36% of the settlement fund in BIPA class settlement); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, Dkt. 69 (N.D. Ill. Apr. 27, 2021) (awarding

35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv- 07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020) (same).

Further, there is no clear-sailing agreement. (Ex. 1 ¶ 86-91.) The Settlement Class Members will also have an opportunity to review Class Counsel's requested fee award prior to final approval – as it will be made available on the Settlement Website upon filing and far in advance of the deadline to object or opt out of the Settlement – and no fees will be paid until after the Settlement is approved. Accordingly, the allowable fee award of 36% under Settlement is appropriate at this stage.

It's worth emphasizing, however, that when evaluating the adequacy of relief under Rule 23(e)(2)(C), the Court's decision on settlement approval is completely distinct from its determination of fees. *T.K.*, 2022 WL 888943, at *15. ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement.").

### d.    There are no side agreements separate from the Settlement.

The last consideration in Rule 23(e)(2)'s assessment of the adequacy of relief requires this Court to take into account "any agreement made in connection with the [proposed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). This consideration ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2003 Amendment. Here, there are no such agreements; all terms affecting Settlement Class Members are contained within the Settlement Agreement.

In sum, each of the four express considerations of Rule 23(e)(2)(C)'s adequacy of relief requirement suggest that the Rule is satisfied here.

4.    **The Settlement treats all Settlement Class Members equitably.**

The final Rule 23(e)(2) factor asks whether the settlement "treats class members equitably relative to each other." This Settlement plainly does. This case only involves one Settlement Class, and the Settlement treats each Settlement Class Member *identically*. The terms of the Settlement apply uniformly across the Settlement Class. Each Settlement Class Member will receive an equal *pro rata* payment processed by the Administrator, and each Settlement Class Member will also receive the same notice and be subject to the same deadlines for objections and exclusion requests. No group or individual is unfairly advantaged or disadvantaged. Accordingly, this factor also weighs in favor of granting preliminary approval.

**C.    The Court Should Approve The Form And Manner Of Notice Contemplated By The Settlement, And Order That Notice Be Disseminated To The Settlement Class.**

Finally, once the Court has preliminarily approved the Settlement, it must direct that notice be disseminated to the Settlement Class. Fed. R. Civ. P. 23(e)(1)(B). Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Notice need not be perfect, but it should be crafted to reasonably provide sufficient information about the settlement and the rights and available options thereunder. *CE Design v. Beaty Constr., Inc.*, No. 07 C 3340, 2009 WL 192481, at *10 (N.D. Ill. Jan. 26, 2009) ("the best notice that is 'practicable' [is] not perfect notice. The word 'practicable' implies that the plaintiff should be afforded some flexibility with respect to providing notice to unknown, potential class members.")

With respect to the method of notice, Rule 23(e)(1)(A) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed

24

settlement.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The substance of the notice must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

The notice plan proposed here satisfies both the requirements of Rule 23 and Due Process. The Settlement calls for direct notice via U.S. Mail to all Settlement Class Members based on current or last known contact information. (Ex. 1 ¶ 71.c.) Because all the Settlement Class Members are individuals who are known to Defendant or its contracted staffing agencies, Defendant will provide the Settlement Administrator with the Settlement Class Members' contact information (including names and associated mailing addresses) that Defendant or the contracted staffing agencies have for each Settlement Class Member, to the extent available, to enable the Settlement Administrator to effectuate direct notice. (*Id.* ¶ 70.) Class Counsel anticipate that the Notices will be highly effective at reaching the Settlement Class Members due to the preexisting employment or placement relationship between Defendant and the Class.

The Settlement Administrator will send direct notice via U.S. mail to all Settlement Class Members for whom a valid U.S. postal address is contained in, or can be derived from, the Class List. (*Id.* ¶ 71.c.) Before attempting any mailings, the Settlement Administrator will update and/or attempt to identify addresses through the National Change of Address database or similar resources. (*Id.*) In the event any mailed notices are returned as undeliverable, the Settlement Administrator shall, where reasonable, correct any issues that may have caused the return to occur and make a second attempt to send the U.S. Mail notice, including conducting a firm level skip trace. (*Id.* ¶ 71.c.)

25

The Settlement's direct notice will be supplemented with publication notice via a Settlement Website. This website will include a more fulsome notice of the Settlement, in English and Spanish, relevant case documents, and all key dates and deadlines. (*Id.* ¶¶ 47, 71.d.) It will also include contact information for the Settlement Administrator and Class Counsel. (*Id.* ¶ 47.)

In sum, the proposed notice plan provides robust direct notice to fully inform the Settlement Class Members of all relevant information about the proposed Settlement and their rights under it in plain, easily understood language. As this is the best notice practicable, the Court should approve the notice plan as set forth in the Settlement.

## V.    **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.**

Finally, if the Court finds that the Settlement Class is certifiable, it should appoint Plaintiff's counsel as Class Counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserting in the action, (iii) counsel's knowledge of the applicable law, and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in Section IV(A)(4) above, proposed Class Counsel have extensive experience litigating consumer privacy class actions, including BIPA cases and have been appointed class counsel in many cases in Illinois federal and state courts; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Meyers Decl. ¶ 8). All of the Rule 23(g)(1)(A) considerations thus support the appointment of Plaintiff's counsel as Class Counsel in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18 C 1526, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process") (quotations omitted).

## VI.    <u>PROPOSED SCHEDULE</u>

In accordance with the Settlement Agreement, the Parties propose the following schedule leading to the hearing on final approval of the Settlement:

| Event | Settlement Agreement Timeline | Proposed Date |
|---|---|---|
| Notice Begins | Thirty (30) days after entry of an Order granting preliminary approval. | _____, 2025 |
| Plaintiff's Deadline to File Motion for Award of Attorneys' Fees and Costs and Service Award | Twenty-one (21) days prior to the Objection & Exclusion Deadline. | _____ 2025 |
| Deadline for Objections & Requests for Exclusion | Forty-two (42) days after the Notice Begins | _____, 2025 |
| Plaintiff's Deadline to File Motion for Final Approval | Ten (10) days prior to the Final Approval & Fairness Hearing. | _____, 2026 |
| Final Approval & Fairness Hearing | Approximately one hundred twenty (120) days after entry of an Order granting preliminary approval. | _____, 2026 |

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (1) granting this Motion; (2) preliminarily approving the proposed Settlement Agreement; (3) preliminarily certifying the proposed Settlement Class for purposes of settlement and/or finding that the Settlement Class is likely to be certified for purposes of entering a final approval order; (4) appointing Plaintiff Steven Newbern as the Class Representative of the Settlement Class; (5) appointing Evan M. Meyers and Andrew T. Heldut of McGuire Law, P.C. as Class Counsel; (6) approving as to form and content the proposed Notice; (7) directing that Notice be provided to Settlement Class Members pursuant to the notice plan set forth in the Settlement; (8) scheduling a

final fairness hearing in this matter; and (9) granting such further relief as the Court deems reasonable and just.[2]

Dated: October 15, 2025                    Respectfully submitted,

                                           STEVEN NEWBERN, individually and on
                                           behalf of similarly situated individuals,

                                           By: /s/  Andrew T. Heldut_____
                                           One of Plaintiff's Attorneys

                                           Evan M. Meyers
                                           Andrew T. Heldut
                                           MCGUIRE LAW, P.C.
                                           55 W. Wacker Drive, 9th Fl.
                                            Chicago, IL 60601
                                           Tel: (312) 893-7002
                                           emeyers@mcgpc.com
                                           aheldut@mcpgc.com

                                           *Attorneys for Plaintiff and Proposed Class
                                           Counsel*

---

[2] For the Court's convenience, Exhibit A to the Settlement Agreement contains a proposed Preliminary Approval Order for the Court's consideration.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2025, I caused the foregoing *Plaintiff's Unopposed Motion & Memorandum of Law in Support of Preliminary Approval of Class Action Settlement* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

<u>/s/ Andrew T. Heldut</u>